**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY
CAMDEN VICINAGE**

| | |
|---|---|
| **ERIC POE,** | |
| **Plaintiff,** | **Civil No. 20-14586 (RMB/SAK)** |
| **v.** | |
| **DRIVER HISTORY SALES CORP. et al.,** | |
| **Defendants.** | |

## O P I N I O N   A N D   O R D E R

This matter is before the Court by way of a discovery dispute concerning the deposition of third-party witness, Mark A. Bernstein, Esquire ("Bernstein"). Defendants Stephen Esposito ("Esposito") and Scott Nichols ("Nichols") (collectively, the "Individual Defendants") object to Plaintiff's subpoenaed deposition of Bernstein, claiming that Bernstein's conversations with the Individual Defendants relating to claims raised in this lawsuit are protected by the attorney-client privilege. Defendants Driver History Sales, LLC, Trans Union, LLC, Trans Union Intermediate Holdings, Inc, and TransUnion (collectively, "Corporate Defendants"), similarly object to Bernstein's deposition. They claim this deposition is irrelevant and privileged. The Court conducted oral arguments on the defendants' objections on May 13, 2022, followed by an evidentiary hearing on June 6, 2022. In addition to the arguments and evidence elicited from the hearings, the Court also considered written submissions from the parties. [ECF Nos. 83, 84, 85]. The Court notes the following appearances at the evidentiary hearing: Anthony Argiropoulos, Esquire, on behalf of Plaintiff Eric Poe, William J. Sushon, Esquire, and Sarah E. Higgins, Esquire, on behalf of the Corporate Defendants, and Benjamin W. Spang, Esquire, and James J. Rodgers,

1

Esquire, on behalf of the Individual Defendants.  For the reasons set forth herein, it is hereby Ordered that the defendants' objections to the taking of Bernstein's deposition are **OVERRULED.**

## BACKGROUND

On or about October 22, 2007, Plaintiff Poe and Defendant DHI entered into a consulting agreement, whereby Poe agreed to provide services to DHI including assisting DHI in procuring contracts from insurance companies relating to the sale of unofficial driver history data (the "Consulting Agreement"). [ECF No. 31-4 at ¶ A].  Section 6 of the Consulting Agreement consisted of a "Commissions Clause" providing for commission payments to Poe for contracts procured with Poe's assistance. [*Id*. ¶ 6].  Section 6 also contained a "Sales Clause" that provided for payment to Poe of a portion of the sales proceeds in the event the company was sold. [*Id*.]  The Consulting Agreement was modified by a March 27, 2008 addendum ("Addendum"). [ECF No. 31-5].  On October 16, 2020, Poe initiated the instant breach of contract action based upon diversity jurisdiction.  On May 14, 2021, all Defendants filed Motions to Dismiss. [ECF Nos. 53, 55].  In a December 15, 2021 Order stemming from these motions, the Honorable Renée Marie Bumb, U.S.D.J., allowed the parties to conduct limited discovery regarding their interpretations of the Sales Clause of Section 6 of the Consulting Agreement. [ECF No. 64].

On April 29, 2022, the date that limited fact discovery was scheduled to end, the Individual Defendants advised the Court of a discovery dispute involving the deposition of the final witness, Bernstein.  On May 9, 2022, the parties filed letters with the Court, elaborating their respective positions. [ECF Nos. 75, 76, 77].  Plaintiff stated he sought to depose Bernstein about his interpretation of Section 6 of the Consulting Agreement and requested an order compelling the production of non-privileged documents in Bernstein's possession. [ECF No. 76 at 1].  Individual Defendants objected to Plaintiff's proposed line of questions to Bernstein and any related

production based on their assertion of the attorney-client privilege. [ECF No. 75].  Specifically, Esposito and Nichols contend that "[c]ommunications between the Individual Defendants and Mr. Bernstein related to the Consulting Agreement during its negotiation or the subsequent performance of that agreement by Mr. Poe and termination are clearly privileged." [*Id.* at 2]. Corporate Defendants similarly objected "on the grounds of attorney-client privilege to any question[s] about Mr. Bernstein's (i) interpretation of the Consulting Agreement, and (ii) privileged communications with anyone from his then-client, Drivers History, Inc." [ECF No. 77].

On May 13, 2022, prior to a discovery conference scheduled to address this issue, the Court received a letter from Bernstein stating that he was never General Counsel nor House Counsel for DHI. [ECF No. 78].  On the same date, the Court conducted a discovery dispute conference and heard oral arguments from all the parties regarding the attorney-client privilege. [ECF No. 80]. Bernstein did not participate in the conference.   The Court ruled, on the record, that communications between Bernstein and Esposito relating to Bernstein's representation of Esposito in personal legal matters are protected by the attorney-client privilege.  Regarding Mr. Bernstein's role as General Counsel for DHI, the Court scheduled an evidentiary hearing.  This hearing was conducted on June 6, 2022.  The Court heard testimony from all three principals of DHI.  Esposito and Nichols testified on their own behalf, while Bernstein's testimony was solicited by Plaintiff.

## LEGAL STANDARD

Pursuant to Fed. R. Evid. 501, when dealing with the issue of privilege in diversity-based jurisdiction cases, the district court is to refer to state law.  *United Coal Companies v. Powell Const. Co.*, 839 F.2d 958, 965 (3d Cir. 1988).  Accordingly, the attorney-client privilege analysis will be governed by New Jersey state law.[1]  While the federal attorney-client privilege is absolute,

---

[1] Pursuant to the terms of the Consulting Agreement at issue, the laws of the State of New Jersey also govern disputes stemming from the agreement. *See* Ex. D to Pl.'s Am. Compl. at 7 ¶ 29 [ECF No. 31-4].

the New Jersey state privilege is qualified. *Leonen v. Johns-Manville*, 135 F.R.D. 94, 98 (D.N.J. 1990). Nonetheless, state courts recognize the same policies behind the privilege as federal courts. *Id*.

The Supreme Court has recognized the attorney-client privilege as "the oldest of the privileges for confidential communications known to the common law." *Upjohn Co. v. United States*, 449 U.S. 383, 389 (1981). Its purpose is to encourage full and frank communication between attorneys and their clients and thereby promote broader public interests in the observance of law and administration of justice. *Id*. The privilege protects communications between attorneys and clients from compelled disclosure. *In re Teleglobe Commc'ns Corp.*, 493 F.3d 345, 359 (3d Cir. 2007), *as amended* (Oct. 12, 2007). Protected communications can be written as well as oral. *Leonen v. Johns-Manville*, 135 F.R.D. 94, 98 (D.N.J. 1990).

The attorney-client privilege applies to any communication that satisfies the following elements: it must be "(1) a communication; (2) made between privileged persons; (3) in confidence; and (4) made for the purpose of obtaining or providing legal assistance for the client." *Id*. (quoting *Restatement (Third) of the Law Governing Lawyers § 68 (2000)*). "Privileged persons" include the client, the attorney(s), and any of their agents that help facilitate attorney-client communications or the legal representation. *Restatement (Third) of the Law Governing Lawyers* § 70 (2000); *see also United Coal Companies v. Powell Const. Co.*, 839 F.2d 958, 965 (3d Cir. 1988) (stating that "the key is whether the person asserting the privilege had a professional consultation with an attorney, who acts or advises as such").

However, the attorney-client privilege does not apply to communications which relate to business rather than legal matters. *Leonen v. Johns-Manville*, 135 F.R.D. 94, 98 (D.N.J. 1990). The Court must therefore inquire as to whether "the communication is designed to meet problems

which can fairly be characterized as predominately legal." *Id*. at 98-99 (citations omitted).  Stated differently, "the claimant must demonstrate that the communication would not have been made but for the client's need for legal advice or services." *Id*. at 99 (citation omitted).  When dealing with in-house counsel, the Court focuses on whether the communications or documents were made to in-house counsel in their professional capacity as a lawyer. *Leonen v. Johns-Manville*, 135 F.R.D at 98.  The party claiming the privilege has the burden of establishing that the privilege applies. *Maldonado v. New Jersey ex rel. Admin. Off. of Cts.-Prob. Div.*, 225 F.R.D. 120, 127 (D.N.J. 2004).

## DISCUSSION

The Court finds that Individual Defendants and Corporate Defendants have not met their burden of establishing that the attorney-client privilege applies to Bernstein's communications with the Individual Defendants relating to the Consulting Agreement and Addendum, including the negotiation, drafting, execution, performance, and termination of this Agreement/Addendum.  At the evidentiary hearing, Esposito testified that he was President and CEO of DHI and its affiliated entities,[2] while Bernstein was Vice President and General Counsel of these entities.  Esposito testified that as General Counsel, Bernstein's responsibilities included reviewing contracts and "acting as the company's attorney."  He testified that business cards designating Bernstein as Vice President and General Counsel of the affiliated companies were created in 2006 and issued to Bernstein.  However, he further testified that he did not know whether Bernstein used the business cards.  He also testified that he did not know whether the shareholders' agreement identified Bernstein as General Counsel.  As to the Consulting Agreement at issue, Esposito testified that that he and Plaintiff Poe negotiated the agreement, while Bernstein observed the

---

[2] The affiliated entities include Lawyers Edge and Courtnames, Inc.

5

transaction and acted as legal advisor to the transaction.  He also testified that a Form 1099 was issued to Gigliotti & Bernstein, P.C.[3] in 2008 in payment of legal services rendered by this firm to DHI.  Esposito also testified that he worked for Arthur Andersen and Price Waterhouse prior to his involvement with DHI.  He testified that he was licensed as an attorney in Pennsylvania while initially working for Arthur Andersen, but that he did not renew his law license at the direction of Arthur Andersen.

DHI Principal Scott Nichols testified that he, Esposito, and Bernstein were the owners of DHI.  He testified that while he provided technical services to the company, Esposito provided business development services, and Bernstein solicited law firms for DHI's services.  Nichols testified that Bernstein did not provide legal analysis as to the Consulting Agreement at issue.  As to Section 6 of this agreement, Nichols testified that he understood Bernstein's input to this section was limited to Bernstein's concern that this provision provided commissions to Poe for an extensive twenty-year period.

Bernstein testified that he has been an attorney for 27 years.  He testified that the focus of his practice has been criminal law.  He testified that he had never been General Counsel for DHI and that he did not prepare the Consulting Agreement or provide legal services or advice relating to this agreement.  He testified that he reviewed the consulting agreement in his capacity as a partner.  As to the Addendum, he testified that he signed this document in his capacity as President of DHI.  Regarding the business cards designating him as Vice President and General Counsel, Bernstein testified that he did not create these business cards nor had he seen these cards.  He further stated that he had no input in any business cards created by DHI.  He further testified that his email signature designated him as Group President and CEO, but not as General Counsel, was

---

[3] Gigliotti & Bernstein, P.C. was a law firm affiliated with Bernstein.

6

not prepared by him.  He testified that he did not possess the "technical" skills to create this signature.

After hearing testimony from the three principals of DHI, the Court gleaned that the business relationship of the three principals soured over time, culminating in legal claims and counterclaims against each other.  The Court had the opportunity to observe the witnesses' demeanor.  Although none of the witnesses were disinterested persons, the Court found Nichols to be credible.  The Court accepts Nichols' testimony that Bernstein did not provide legal analysis as to the Consulting Agreement.  This testimony is consistent with the sum of the evidence that suggests Bernstein did not have the requisite business law skills or savvy to serve as DHI's corporate counsel or to provide legal advice regarding the consulting agreement.  Nichol's testimony that Bernstein's involvement was limited to concerns about commission payments to Poe indicate that this concern stemmed from Bernstein's business interest in the company as opposed to his interest as a legal advisor.

Esposito and Bernstein provided substantially conflicting testimony.  The Court notes that both parties are subject to bias.  However, the burden of establishing that the attorney-client privilege applies, rests with the party claiming the privilege.  Here, the defendants have not satisfied this burden.  The plaintiff may therefore proceed with the deposition of Bernstein.  The attorney-client privilege as to the consulting agreement shall not be the basis of any objection at the deposition.  Plaintiff is also entitled to the discovery of non-privileged documents that are relevant to the limited discovery issue and that are in Bernstein's possession.

The Court also finds Bernstein's testimony to be relevant.   All three witnesses testifying at the evidentiary hearing indicated that Bernstein had varying levels of involvement in the

Consulting Agreement.  To the extent Bernstein is capable of providing testimony relating the interpretation of Section 6 of the Consulting Agreement, this testimony is highly relevant.

**IT IS THEREFORE ORDERED** this **22nd** day of **June 2022**, that the defendants' objections to the taking of Bernstein's deposition are **OVERRULED**.  Plaintiff's deposition of Mark Bernstein may proceed.  The attorney-client privilege is not applicable to communications with the Individual Defendants concerning the negotiation, drafting, execution, performance and termination of the agreement, and its addendum; and it is further

**ORDERED** that Bernstein shall produce non-privileged documents relevant to Section 6 of the Consulting Agreement that are in his possession, as requested by Plaintiff; and it is further

**ORDERED** that the deposition of Bernstein shall be completed by July 15, 2022.

**s/ Sharon A. King**

SHARON A. KING
United States Magistrate Judge