[Docket Nos. 53, 55]

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY
CAMDEN VICINAGE

---

| | |
|---|---|
| ERIC POE, | |
| Plaintiff, | Civil Action No. 20-14586 (RMB/SAK) |
| v. | |
| DRIVER HISTORY SALES CORP., *et al.*, | SUPPLEMENTAL OPINION |
| Defendants. | |

---

**BUMB, United States District Judge**

This matter comes before the Court upon the supplemental briefing submitted by the parties on the following two issues: (1) what the limited discovery ordered by the Court has shown with respect to interpretation of the Sales Clause contained in Section 6 of the parties' Consulting Agreement; and (2) whether the ultimate issue of interpreting such provision is for the Court or the jury to decide. [Docket Nos. 98, 99, 100.]

As discussed below in greater detail, the Court is satisfied that, as a matter of law, the Sales Clause is susceptible to more than one reasonable alternative interpretation as to the issue of whether such provision survived an earlier termination of the Consulting Agreement. Thus, at this stage of the litigation, the Court finds that the Sales Clause is ambiguous. Accordingly, the Court will deny the

1

Defendants' pending motions to dismiss and the suit shall proceed to discovery in the normal course.

## I.        FACTUAL AND PROCEDURAL BACKGROUND

On December 15, 2021, in its earlier Opinion and Order, the Court ordered the parties to proceed with limited discovery on the following narrow issue: "whether the 'in exchange for' language in the Sales Clause in Section 6 of the Consulting Agreement requires a temporal limitation." [Docket No. 64, at 20.] During the limited discovery period, the Honorable Sharon A. King held an evidentiary hearing and overruled Defendants' objections to the deposition testimony of Mark Bernstein ("Mr. Bernstein"), who previously served as General Counsel for Driver's History, Inc. and its related entities.  Specifically, Judge King ruled as follows:

> Individual Defendants and Corporate Defendants have not met their burden of establishing that the attorney-client privilege applies to Bernstein's communications with the Individual Defendants relating to the Consulting Agreement and Addendum, including the negotiation, drafting, execution, performance, and termination of this Agreement/Addendum.

[Docket No. 87, at 5.]

Judge King also explained that Mr. Berstein's testimony was relevant to the current controversy because several witnesses at the evidentiary hearing "indicated that Bernstein had varying levels of involvement in the Consulting Agreement." [*Id.* at 78.]  Indeed, Plaintiff has filed a Certification from Mr. Bernstein, in which he testifies under penalty of perjury to each of the following in support of Plaintiff's claims:

2

- Mr. Poe was "to be paid a portion of a sales proceeds if the company was ever sold." [Docket No.98-7 ¶ 4.]

- "There were two versions of the Consulting Agreement … [t]he final version … was between Eric Poe and the fake company, Driver History's Sales Corp." [*Id.* ¶ 56.]

- "Steve created this fake company with the specific intent that if Eric ever tried to exercise his financial rights under the Consulting Agreement, Eric would be prevented from doing so." [*Id.* ¶ 7.]

- "It was always my understanding, and remains my understanding, that Eric Poe was entitled to a portion of the sales proceeds at any time that the company was sold. This included after the Consulting Agreement was terminated." [*Id.* ¶ 8.]

- The Addendum to the Consulting Agreement "only modified the commissions…I did not understand it to impact or alter his ability to receive 15% of the sales proceeds if the company was sold." [*Id.* ¶ 11.]

The Court also incorporates its earlier factual summary of the relevant provisions of the Consulting Agreement, modifications made by the parties to the Consulting Agreement, and the eventual corporate transaction involving TransUnion. [*See* Docket No. 64 at 3–7.]

## II. LEGAL STANDARD

When considering a motion to dismiss for failure to state a claim upon which relief can be granted pursuant to Fed. R. Civ. P. 12(b)(6), a court must accept all well-pleaded allegations in the complaint as true and view them in the light most favorable to the plaintiff. *Evancho v. Fisher*, 423 F.3d 347, 351 (3d Cir. 2005). It is well-settled that a pleading is sufficient if it contains "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2).

3

"While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do. . . ." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (alteration in original) (citations omitted) (first citing *Conley v. Gibson*, 355 U.S. 41, 47 (1957); then citing *Sanjuan v. Am. Bd. of Psychiatry & Neurology, Inc.*, 40 F.3d 247, 251 (7th Cir. 1994); and then citing *Papasan v. Allain*, 478 U.S. 265, 286 (1986)).

> To determine the sufficiency of a complaint, a court must take three steps. First, the court must "tak[e] note of the elements a plaintiff must plead to state a claim." Second, the court should identify allegations that, "because they are no more than conclusions, are not entitled to the assumption of truth." Third, "whe[n] there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement for relief."

*Malleus v. George*, 641 F.3d 560, 563 (3d Cir. 2011) (alterations in original) (citations omitted) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 664, 675, 679 (2009)). A court may "generally consider only the allegations contained in the complaint, exhibits attached to the complaint and matters of public record." *Schmidt v. Skolas*, 770 F.3d 241, 249 (3d Cir. 2014) (citing *Pension Benefit Guar. Corp. v. White Consol. Indus., Inc.*, 998 F.2d 1192, 1196 (3d Cir. 1993)).

### III. ANALYSIS

Central to the parties' dispute is the Sales Clause contained at Section 6 of the Consulting Agreement, reproduced in pertinent part below:

4

> Moreover, in the event DHIS is sold directly (or indirectly through a sale of DHI parent company) Consultant will receive 15% of the sales proceeds of DHIS (or allocated share of such) in exchange for a termination of this consulting agreement and Consultant agrees to forego all future revenue associated with this agreement post sale.

[Docket No. 31-4, at ¶ 6 (alteration omitted).] Defendants maintain that because the Consulting Agreement was terminated prior to the sale of DHIS, there could be no "contemporaneous trade" that would entitle Plaintiff to any sale proceeds. [Docket No. 100, at 2.] In opposition, Plaintiff argues that the order of the exchange is not consequential; it was always his understanding that he would be entitled to the sale proceeds so long as he forfeited his right to any future commissions and did not continue his engagement with the company following such sale. [*See* Docket No. 98, at 12.]

At the outset, the Court makes two initial observations. First, the Court agrees with the "Corporate Defendants"[1] that the narrow issue remaining to decide the pending motions concerns whether the alternative meaning of the Sales Clause proffered by Plaintiff is reasonable. [Docket No. 100, at 4.] Second, the Court agrees with Plaintiff's reading of *Mellon Bank, N.A. v. Aetna Bus. Credit, Inc.*, 619 F.2d 1001 (3d Cir. 1980), and its applicability here. In *Mellon Bank*, the Third Circuit explained that pursuant to Pennsylvania contract law:

> It is the role of the judge to consider the words of the contract, the alternative meaning suggested by counsel, and the nature of the objective evidence to be offered in support of that meaning. The trial judge must then determine if a

---

[1] For purposes of this Opinion, "Corporate Defendants" refers to Driver History Information Sales, LLC, TransUnion, LLC, TransUnion Intermediate Holdings, Inc., and TransUnion.

5

> full evidentiary hearing is warranted. If a reasonable alternative interpretation is suggested, even though it may be alien to the judge's linguistic experience, objective evidence in support of that interpretation should be considered by the fact finder.

*Id.* at 1012. However, unlike in the current suit where Plaintiff has expressly demanded a jury trial [*See* Docket No. 31, at 1], *Mellon Bank* concerned an appeal of trial court's findings made "after a bench trial." *Id.* at 1007. Here, since the ultimate finder of fact is the jury and not the Court, if reasonable alternative interpretations of the Sales Clause have been suggested by the parties, the ultimate question concerning the parties' intent must be left for the jury to decide.

    Plaintiff, referencing the testimony of Mr. Bernstein, argues that "a reasonable alternative interpretation has not only been suggested, but it has been supported through the [limited] discovery conducted to date." [Docket No. 98, at 25.] However, Defendants Stephen Esposito and Scott Nichols (the "Individual Defendants") counter that the Sales Clause in the Consulting Agreement is "clear, unambiguous[,] and provide[s] for only one reasonable interpretation. [Docket No. 99, at 12.] The Corporate Defendants also argue that Plaintiff has failed to offer an alternative interpretation that is *reasonable*. [Docket No. 100, at 4.] Defendants also criticize Mr. Bernstein's testimony as not "objective," and thus, argue that the Court should not considered it. [*See* Docket No. 99, at 15–16.]

    The Court finds that Plaintiff's proffered alternative meaning of the Sales Clause is reasonable. The Court echoes the findings of Judge King that Mr. Bernstein's testimony is not only admissible, but highly relevant. The parties also do

6

not dispute that the Consulting Agreement is governed by New Jersey law. [*See* Docket No. 98-5 ¶ 29.] Importantly, the Supreme Court of New Jersey has a longstanding interpretation of its applicable contract law that permits courts to consider extrinsic evidence like Mr. Bernstein's testimony even when a contract is unambiguous on its face. *See Nat'l Util. Serv., Inc. v. Chesapeake Corp.*, 45 F. Supp. 2d 438, 446 (D.N.J. 1999) (citing *Atlantic Northern Airlines v. Schwimmer*, 12 N.J. 293, 301 (1953) ("Evidence of the circumstances is always admissible in aid of the interpretation of an integrated agreement. This is so even when the contract on its face is free from ambiguity."). Further, the Supreme Court of New Jersey has expressly explained that "in the quest for the intention of the parties to the contract … the judicial interpretative function is to consider what was written, in the entire context of the circumstances under which it was written, and to accord the language a rational meaning in keeping with the expressed general purpose." *Jacobs v. Great Pac. Century Corp.*, 104 N.J. 580, 586 (1986).

In any event, the motions presently pending before the Court are to dismiss the Amended Complaint pursuant to Federal Rules of Civil Procedure 12(b)(6). Thus, at this stage of the litigation Plaintiff's allegations must be taken as true. At the same time, and as the Court previously acknowledged, it cannot be the case that Plaintiff will be able to collect both future commissions and foregone sale proceeds pursuant to the plain terms of the Sales Clause. [*See* Docket No. 64, at 19 n.11 (explaining that Plaintiff "would not be entitled to keep both his 20-year commissions and 15% of the sales proceeds under any interpretation of the

7

Consulting Agreement").] But at this stage, Plaintiff has met his burden for the case to proceed.[2]

## IV.  CONCLUSION

The Court is satisfied that the Sales Clause of the Consulting Agreement is ambiguous, as a matter of law. The parties have proffered reasonable alternative interpretations. Thus, the litigation shall proceed in the normal course to discovery and the pending motions shall be DENIED WITH PREJUDICE. An accompanying Order of today's date shall issue.

<u>January 25, 2023</u>                 <u>s/Renée Marie Bumb</u>
Date                                Renée Marie Bumb
                                           U.S. District Judge

---

[2] The parties also quarrel over a purported email that Defendants contend would resolve the ambiguity issue in their favor as a matter of law. [See Docket No. 98, at 18.] However, Plaintiff raises several issues with the evidence, including that only a printed email was produced in limited discovery, such that the email is not admissible and the jury ought not consider it unless it can be properly authenticated pursuant to Federal Rule of Evidence 901. [Id. at 19 n.8.] This only further suggests to the Court that full discovery is the appropriate next step.