**[ECF No. 234]**

**THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW JERSEY**
**CAMDEN VICINAGE**

| | |
|---|---|
| **ERIC POE,**<br><br>**Plaintiff,**<br><br>**v.**<br><br>**DRIVER HISTORY SALES CORP, et al.,**<br><br>**Defendants.** | **Civil No. 20-14586-RMB-SAK** |

**OPINION AND ORDER**

This matter comes before the Court on the application [ECF No. 234] of Defendants and Third-Party Plaintiffs Scott Nichols and Stephen Esposito (collectively, "Defendants") for an order amending the Joint Final Pretrial Order ("JFPO") [ECF No. 215] and to allow Defendants to file a Motion to Compel the production of Eric Poe's ("Plaintiff") settlement agreement ("Settlement Agreement") with former Defendants TransUnion, LLC, TransUnion Intermediate Holdings, Inc., TransUnion, and Drivers History Information Sales, LLC (collectively, "TransUnion"). The Court received Plaintiff's opposition [ECF No. 235], and Defendants' reply [ECF No. 236]. The Court exercises its discretion to decide Defendants' motion without oral argument. *See* Fed. R. Civ. P. 78; L. Civ. R. 78.1. For the reasons set forth herein, Defendants' application is **DENIED**.

## I. BACKGROUND

Plaintiff filed this contract action on October 16, 2020. *See* Compl. [ECF No. 1]. In brief, Plaintiff alleges that Defendants breached an agreement he entered into with Defendants, wherein Plaintiff rendered consulting services ("Consulting Agreement") to Driver History Sales Corp.

("DHIS").[1] Specifically, Plaintiff alleges that Defendants breached the Consulting Agreement's Sales Clause by failing to pay him a percentage of the proceeds or any allocated shares following the sale of the company to TransUnion (the "TransUnion sale"). *See* Am. Compl. ¶¶ 57, 94 [ECF No. 31 at 14, 20]. Plaintiff's Amended Complaint consists of the following counts: 1) breach of contract, against all named defendants; 2) fraud, against Nichols and Esposito; 3) aiding and abetting fraud, against TransUnion; and 4) tortious interference with the contract, against TransUnion. *Id.* ¶¶ 122–52 [ECF No. 31 at 28–32]. Plaintiff also seeks declaratory judgment under 28 U.S.C. § 2201 establishing, *inter alia*, that the Consulting Agreement is still in effect and that he is entitled to 15% of the proceeds of the sale of DHIS. *Id.* ¶¶ 110–21 [ECF No. 31 at 24–27]. Defendants' Answer to the Amended Complaint largely denies the substance of these claims and asserts numerous defenses. *See* Nichols and Espositos' Answer to Am. Compl. [ECF No. 114].

On August 20, 2024, TransUnion was dismissed from the case by stipulation [ECF No. 157] following the execution of the Settlement Agreement. Fact Discovery ended on October 29, 2024 [ECF No. 162]. On February 2, 2026, the Court conducted its first final pretrial conference with the parties. Revisions to the initial proposed JFPO were discussed, and the parties were directed to submit their proposed final version of the JFPO by February 17, 2026 [ECF No. 188]. On March 20, 2026, the Court held its second final pretrial conference with the parties, and signed the JFPO at the conclusion of this conference [ECF No. 215]. A trial is scheduled for November 9, 2026 [ECF No. 231].

---

[1] The Court adopts the abbreviation used by the parties in their pleadings and other filings, primarily to avoid confusion in light of the many companies participating in the transactions at issue in this case.

Defendants now seek "to amend the Pretrial Order in this case to permit the defendants to bring a motion to compel the production of the settlement agreement that [Plaintiff] negotiated with settling defendant TransUnion LLC." Defs.' Br. at 1 [ECF No. 234-1 at 1]. In their brief, Defendants argue that the Settlement Agreement should be produced because it is relevant to their defense against Plaintiff's breach of contract claim, and because it will inform their evaluation of possible settlement with Plaintiff. *Id.* at 2–4 [ECF No. 234-1 at 2–4]. Specifically, they claim the Settlement Agreement may reveal that TransUnion is providing Plaintiff with continuing commissions, signifying that Plaintiff has not satisfied a condition precedent of his right to enjoy proceeds from the sale of DHIS. Based on this speculation, Defendants further maintain that Plaintiff waived his right to proceeds from the TransUnion sale by voluntarily accepting the speculated commissions, conduct inconsistent with the terms of the Consulting Agreement. *Id.* at 2 [ECF No. 234-1 at 2]. They also claim that as a practical consequence of receiving the Settlement Agreement, they can engage in informed settlement negotiations with Plaintiff. In short, Defendants contend knowing the terms of the Settlement Agreement would guard against Plaintiff receiving more than Defendants are liable for, avoiding "double recovery" by Plaintiff. *Id.* at 2–3 [ECF No. 234-1 at 2–3].

Plaintiff opposes the application, arguing that Defendants requested the Settlement Agreement on September 26, 2024, but chose not to seek to compel its production. *See* Pl.'s Opp'n at 3 [ECF No. 235 at 7]. Plaintiff notes that Defendants filed a motion for summary judgment [ECF No. 176] and a JFPO [ECF No. 215], but failed to assert in either that Plaintiff's settlement with TransUnion supported the proposed defenses of failure to satisfy a condition precedent to proceeds or a waiver of proceeds. *Id.* at 4 [ECF No. 235 at 8]. Plaintiff contends first that the Defendants failed to demonstrate "manifest injustice," as required by Rule 16(e) for the

amendment of a final pretrial order. *Id.* at 5 [ECF No. 235 at 9]. Second, Plaintiff argues that Defendants' proposed new defenses of (1) failure to satisfy a condition precedent and (2) waiver are inconsistent with their "offset damages" defense and characterization in the JFPO that Plaintiff was overpaid. *Id.* at 9 [ECF No. 235 at 13]. Third, Plaintiff argues the proposed defenses are in any event not meritorious since the Court, in denying Defendants' motion for summary judgment, found that the language of the Sales Clause "reasonably presupposes ongoing commission payments." *Id.* at 11 [ECF No. 235 at 15] (quoting ECF No. 183 at 18). Fourth, Plaintiff argues that the proposed motion to compel production is not meritorious because Defendants do not address the standard for production of confidential settlement materials. *Id.* at 13 [ECF No. 235 at 17]. Finally, Plaintiff argues that Defendants' concern regarding settlement negotiations and guarding against double recovery is not a legally recognized basis for reopening discovery. *Id.* at 14 [ECF No. 235 at 18].

In their reply, Defendants counter that they satisfy the manifest injustice standard of Rule 16(e) because an "important liability issue [has] emerged near trial." Defs.' Reply at 2 [ECF No. 236 at 2] (citing *Pharmaceutical Sales & Consulting Corp. v. J.W.S. Delavau Co.*, 59 F. Supp. 2d 408, 416–17 (D.N.J. 1999)). Second, they contend that the defenses of failure to satisfy a condition precedent and waiver are preserved as Plaintiff's performance obligation under the Consulting Agreement is described as a contested fact in the JFPO. Defs.' Reply at 4 [ECF No. 236 at 4]. Third, Defendants maintain that the two defenses are indeed meritorious since in denying the motion of summary judgment, the Court reserved for the jury the question of whether relinquishment of commissions was a condition precedent or rather a consequence of receiving sales proceeds. *Id.* at 7 [ECF No. 236 at 7]. Fourth, they assert that an *in camera* review of the Settlement Agreement should assuage confidentiality concerns. *Id.* at 10 [ECF No. 236 at 10].

Finally, Defendants reiterate their settlement position saying, "it is unrealistic to expect meaningful settlement discussions while defendants are kept from the terms of an agreement that bears on both liability and damages." *Id.* at 11 [ECF No. 236 at 11].

## II. DISCUSSION

### A. Legal Standard

Federal Rule of Civil procedure 16(e) provides the standard a court must apply when a party moves for modification of a final pretrial order. Rule 16(e) reads in pertinent part as follows:

> The court may hold a final pretrial conference to formulate a trial plan, including a plan to facilitate the admission of evidence. The conference must be held as close to the start of trial as is reasonable, and must be attended by at least one attorney who will conduct the trial for each party and by any unrepresented party. The court may modify the order issued after a final pretrial conference only to prevent manifest injustice.

FED. R. CIV. P. 16(e). The JFPO entered on March 20, 2026 [ECF No. 215] incorporates this language in the concluding certification of the parties. It states, "[I]t is acknowledged that amendments to this Joint Final Pretrial Order will not be permitted except where the Court determines that manifest injustice would result if the amendment is not allowed." Joint Final Pretrial Order at 63 [ECF No. 215 at 63].

"The finality of the pretrial order contributes substantially to the orderly and efficient trial of a case." *Petree v. Victor Fluid Power, Inc.*, 831 F.2d 1191, 1194 (3d Cir. 1987). The burden of the movant is not to demonstrate a lack of prejudice to the nonmovant if the amendment is permitted, but rather to demonstrate that manifest injustice will result if the amendment is not permitted. *See id.* In order to determine whether manifest injustice will result, a court must consider: "(1) the prejudice or surprise to the nonmoving party; (2) the ability of the nonmoving party to cure the prejudice; (3) the extent to which amendment would disrupt the orderly and efficient trial of the case; (4) whether the proposed amendment results from any bad faith or

willfulness; (5) the ability of the movant to have discovered the witnesses, evidence, claims or defenses earlier; (6) the validity of the excuse offered by the dilatory party; (7) the relative importance of the additional evidence; and (8) whether the decision to amend amounts to a matter of new strategy or tactic." *Krys v. Aaron*, 312 F.R.D. 373, 377 (D.N.J. 2015) (citations omitted). Ultimately, the decision of whether to permit amendment to a joint pretrial order rests within the Court's discretion. *Id.* (citing *Joy Mfg. Co. v. Sola Basic Indus., Inc.*, 697 F.2d 104, 109 (3d Cir. 1982)).

When the nature of the proposed amendment implicates a contract dispute governed by state law, as a preliminary question, a district court may consider the nature of the amendment—specifically whether the movant has presented a sufficient legal basis under state law for the court to impose the relief sought. *See, e.g.*, *Pharm. Sales & Consulting Corp. v. J.W.S. Delavau Co.*, 59 F. Supp. 2d 408, 412 (D.N.J. 1999) (considering whether the movant had demonstrated under New Jersey law a sufficient legal basis for the court to impose joint and several liability on those who had been alleged to be operating as a *de facto* corporation but whom the amendment would add as individual defendants); *Petree v. Victor Fluid Power, Inc.*, 831 F.2d 1191, 1194 (3d Cir. 1987) (considering whether movant had demonstrated under Pennsylvania law a sufficient legal basis for the amendment of the pretrial order to impose a claim of negligence on the part of a manufacturer for failure to warn purchasers after a product had left the control of the manufacturer).

**B. Analysis**

The Court first considers this preliminary issue—specifically, whether Defendants have presented a sufficient legal basis under New Jersey law for the Court to allow an amendment to the JFPO and permit Defendant's contemplated motion to compel production of the Settlement Agreement. As noted, Defendants assert three legal theories for this agreement's relevancy: 1) to

demonstrate that Plaintiff did not satisfy a condition precedent of the Consulting Agreement's Sales Clause; 2) to demonstrate that Plaintiff accepted a benefit in the form of commissions and that this acceptance operates as a waiver of his right to proceeds from the TransUnion sale; and 3) to inform settlement negotiations with Plaintiff and prevent Plaintiff's double recovery. The Court will address each legal theory in turn.

The Court finds Defendants failed to provide sufficient legal basis for the amendment under either their first or second legal theory. In seeking production of the Settlement Agreement, Defendants hope to show that Plaintiff agreed to receive commissions from TransUnion for twenty years and therefore has not performed his own obligations under the contract—satisfaction of what Defendants deem a condition precedent of receiving proceeds from the TransUnion sale.[2] Under New Jersey law, a *prima facie* case of breach of contract requires that a plaintiff show "(1) a contract [existed] between the parties; (2) a breach of that contract; (3) damages flowing therefrom; and (4) that the party stating the claim performed its own contractual obligations." *Doe v. Bank of Am., N.A.*, No. 6-3075, 2018 WL 295565, at *5 (D.N.J. Jan. 3, 2018). In seeking production of the Settlement Agreement, Defendants also hope to show that Plaintiff, knowing that he may not receive both sales proceeds and commissions under the Consulting Agreement's Sales Clause,

---

[2] Defendants suggest that Plaintiff's receipt of commissions from TransUnion for twenty years pursuant to the Settlement Agreement signifies his agreement not to forgo commissions, and therefore to forgo sales proceeds. However, Defendants provide no authority for this proposition. The purportedly "seminal New Jersey case" supports the more limited proposition that "[g]enerally, liability can arise on a promise subject to a condition precedent until the condition is met." *Duff v. Trenton Beverage Co.*, 4 N.J. 595, 604, 73 A.2d 578, 583 (1950).

waived his right to sales proceeds by settling his TransUnion claims for ongoing commissions.[3] Under New Jersey law, "[w]aiver is the voluntary and intentional relinquishment of a known right." *Knorr v. Smeal*, 178 N.J. 169, 177 (2003). Therefore, Defendants aver that the Settlement Agreement is relevant because it pertains to Plaintiff's contract claim. However, Defendants fail to acknowledge that each of these two legal theories stems from broad assertions as to the Settlement Agreement's consideration to Plaintiff. Defendants merely "suspect that one of the terms" of the Settlement Agreement provides for commissions. Defs.' Brief at 2 [ECF No. 234-2 at 3]. Courts in this Circuit have found that "[b]road assertions, without more, are insufficient to obtain discovery of a confidential release." *Higgenbotham v. City of Trenton*, No. 17-4344, 2018 WL 10483122, at *4 (D.N.J. Aug. 14, 2018) (quoting *In re Flat Glass Antitrust Litig.*, No. 11-658, 2013 WL 1703864, at *1 (W.D. Pa. Apr. 19, 2013)). In *Higginbotham*, the Court considered whether to compel the production of a settlement agreement between the plaintiff and the movant's co-defendant, and concluded that arguments which rest upon speculation as to contents are detrimental to production. *Id.*

Defendants also failed to provide an adequate legal basis for amendment under their third legal theory. As noted, Defendants assert that the Settlement Agreement will inform settlement negotiations with Plaintiff, and will prevent Plaintiff from receiving more than the sum of the commissions provided for by the Consulting Agreement and the offset proceeds from the TransUnion sale. However, Courts in this Circuit have found that even when settlement

[3] Defendants argue that Plaintiff's conduct constitutes a waiver. However, they provide no authority establishing that a party waives its right to certain benefit under a contract when it settles with a codefendant in active litigation involving the same contract. Defendants cite *Tremonte v. Jersey Plastic Molders, Inc.*, where the defendant who settled in a civil action, was found to waive its right to argue the exclusiveness of the remedy available in a separate workers' compensation action against the same party. 190 N.J. Super. 597, 601, 464 A.2d 1193, 1195 (App. Div. 1983). *Tremonte* is unavailing as its facts are dissimilar from those in this matter.

agreements will enable an assessment of the appropriate share of the movant's liability and, relatedly, the amount of damages to be credited against the monetary judgment of the Plaintiff, that calculation ought to be addressed after a verdict. *See, e.g., Higgenbotham*, 2018 WL 10483122, at *4; *Burlington v. News Corp.*, No. 09-1908, 2015 WL 2070063, at *4 (E.D. Pa. May 4, 2015) ("To the extent the question of an offset of damages arises, it will not arise unless and until a jury returns a verdict in favor of Plaintiff.").

Even if Defendants are deemed to have presented an adequate legal basis for amendment,[4] the Court finds they have not demonstrated that manifest injustice will result if the JFPO is not amended. At the outset, the Court must note that Defendants neither cite nor apply Rule 16(e) in their opening brief, despite the presence of its language in the JFPO's concluding certification signed by counsel. The manifest injustice standard for amending a pretrial order is only addressed in Defendants' reply brief. Their opening brief relied exclusively upon the good cause standard set forth in Rule 16(b)(4).[5] *See, generally*, Defs.' Br. [ECF No 234-1]. "[I]t is well established that new arguments cannot be raised for the first time in reply briefs." *Jurista v. Amerinox Processing, Inc.*, 492 B.R. 707, 779 (D.N.J. 2013). Defendants therefore applied an inappropriate legal standard, and are barred from asserting a new standard in their reply.

---

[4] The Court need not reach the viability of the defenses Defendants ultimately seek to assert in order to draw conclusions about whether there is adequate legal basis to amend the JFPO. *See*, *Pharm. Sales & Consulting Corp. v. J.W.S. Delavau Co.*, 59 F. Supp. 2d 408, 416 (D.N.J. 1999).

[5] Defendants largely limit their Reply to addressing Plaintiff's arguments. However, the Court will not consider Defendants' application of the manifest injustice standard to the extent that it is not in response to Plaintiff's own application of the standard. *Napier v. City of New Brunswick*, No. 17-4152, 2018 WL 6573465, at *5 (D.N.J. Dec. 13, 2018) (emphasis in original) ("The concept that replies are limited to responding to the non-moving party's arguments or reinforcing the moving party's *original* position is universal.").

In evaluating whether to grant leave to amend the JFPO, the Court is guided by the factors enumerated in *Krys v. Aaron*, 312 F.R.D. 373, 377 (D.N.J. 2015). In applying these factors, the Court concludes that manifest injustice will not result if the JFPO is not amended to permit Defendants to move to compel production of the Settlement Agreement. The *Kris* factors are addressed in turn.

**Prejudice or surprise to the nonmoving party.** The Court must consider the "prejudice or surprise to the nonmoving party." *Krys*, 312 F.R.D. at 377. Here, Defendants did not move to compel production of the Settlement Agreement during discovery, although they knew about its existence since at least the Stipulation of Dismissal as to TransUnion was filed on August 20, 2024. Further, the parties reached an agreement whereby "payment amounts and payment terms of the settlement agreement would be discoverable as part of a post-trial motion to mold the verdict." Defs.' Reply at 3 [ECF No. 236 at 3]. Thus, the Court agrees with Plaintiff that the proposed amendment of the JFPO to seek production of the Settlement Agreement comes as a surprise to Plaintiff. The Court further finds that Defendants' proposed amendment would prejudice Plaintiff. In the JFPO, Defendants allege that the Sales Clause did not survive the termination of the Consulting Agreement. Further, Defendants allege that even if the Sales Clause were in force, Plaintiff's commissions have offset and exceeded proceeds from the sale of DHIS. JFPO at 7–9 [ECF No. 215 at 7–9]. The defenses of failure to satisfy a condition precedent and waiver by acceptance of benefits are distinct from those summarized in the JFPO. Defendants argue that the defenses they now seek to assert impose no prejudice on Plaintiff other than the need to address the Settlement Agreement's bearing on his contract claim. Defs.' Reply at 3 [ECF No. 236 at 3]. The Court is not persuaded by Defendants' arguments. Rather than addressing the applicability of the Sales Clause or the offset caused by commissions—theories upon which years

of discovery were developed—the defenses Defendants now seek to assert concern the operation of the Sales Clause as a condition precedent or waiver provision, for which no discovery has been taken. The Court is satisfied that the new defenses Defendants ultimately seek to assert will prejudice Plaintiff, who, on the eve of trial, will have to mount separate arguments against each new defense.

**Plaintiff's ability to cure the prejudice.** The Court must also consider Plaintiff's ability to cure this surprise and prejudice. *Krys*, 312 F.R.D. at 377. If Defendants' motion is granted, Plaintiff's likely cure for the prejudice would be to oppose Defendants' motion to compel the production of the Settlement Agreement, and perhaps to seek additional discovery regarding the new defenses. The Court acknowledges that the options of filing a motion or seeking additional discovery has been deemed adequate cure in the context of a single amendment to a final pretrial order. *See, e.g.*, *Krys*, 312 F.R.D. at 380 (considering a motion to amend a final pretrial order to, *inter alia*, designate an expert witness, and concluding that nonmovant could cure by filing a motion to exclude said expert's testimony); *Pharm. Sales*, 59 F. Supp. 2d at 417 (considering a motion to amend a final pretrial order to add two individual defendants, and concluding that said defendants could cure by engaging in discovery). However, the proposed amendment before the Court anticipates additional amendments if Defendants succeed in obtaining the settlement agreement. Namely, Plaintiff faces the likelihood of a motion to further amend the Joint Final Pretrial Order to assert the defenses based on the speculated provisions of the Settlement Agreement. Thus, Plaintiff's ability to cure necessarily involves protracted motion practice.

**Disruption of the orderly and efficient trial of the case.** The Court must also consider the extent to which amendment would disrupt the orderly and efficient trial of the case. *Krys*, 312 F.R.D. at 377. Trial in this matter is set for November 9, 2026. As Plaintiff adeptly notes, if the

proposed amendment is permitted, the Court would have to decide Defendants' Motion to Compel and preside over any further amendments and subsequent discovery. Pl.'s Opp'n at 7 [ECF No. 235 at 11]. Such delay at this stage of the litigation flies in the face of the goal of finality sought by Rule 16(e). *See Petree,* 831 F.2d at 1194.

**Bad faith/Early discoverability of the defenses/Validity of the excuse.** Next, the Court must consider whether the proposed amendment results from any bad faith or willfulness, the ability of the movant to have discovered the defenses earlier, and the validity of the movant's excuse. *Krys*, 312 F.R.D. at 377. Defendants concede that they have been on notice of the existence of the settlement agreement before the close of discovery, but maintain that they did not seek to compel its production sooner because its "potential dispositive significance became apparent as the parties prepared their proposed jury instructions." Defs.' Br. at 3 [ECF No. 234-1 at 3]. While the Court does not conclude that Defendants seek the amendment in bad faith, the Court also does not find Defendants' explanation of delay to be either reasonable or persuasive. By this stage of litigation—the eve of trial—the parties have presumably engaged in exhaustive research, extensive analysis of discovery, and numerous strategy sessions in preparing their motion for summary judgment [ECF No. 176] and two versions of the JFPO. Defendants also concede that they requested the Settlement Agreement at Plaintiff's deposition. Defs.' Br. at 3 [ECF No. 234-1 at 3]. It stretches credulity to say that defenses emerging from speculated terms of the Settlement Agreement first became apparent to Defendants while counsel prepared jury instruction. The Court finds the eleventh-hour request to amend the JFPO to be the consequence of Defendants' willful delay. Defendants were sufficiently informed at an early stage of the existence of the Settlement Agreement and its practical impact on settling with Plaintiff as well as

its potential impact for developing additional legal defenses. Their motion to compel the Settlement Agreement should have been filed while discovery was open.

**Importance of the additional evidence/Decision to amend amounting to new strategy.** Finally, the Court must consider the relative importance of the additional evidence and whether the decision to amend amounts to a matter of new strategy or tactic. *Krys*, 312 F.R.D. at 377. Defendants argue that the Settlement Agreement is important as it supports the defenses of failure to satisfy a condition precedent and waiver. They also argue it assists with Defendants' evaluation of a possible settlement with Plaintiff. As discussed above in the evaluation of whether an adequate legal basis for amendment exists, the first two theories of relevance rest upon speculation as to whether the Settlement Agreement provides for collection of commissions for a period of twenty years. The last theory of relevance rests upon an assessment of apportionment of damages that courts have found is best saved for after a judgment. For these reasons, the importance of the Settlement Agreement is questionable.

Further, even if the Settlement Agreement supports Defendants' newly articulated defenses, the assertion of those defenses represents a change in strategy. As explained above, the defenses of failure to satisfy a condition precedent and waiver by acceptance of benefits differ from those summarized in the JFPO. The defenses summarized therein include the failure of the Sales Clause to survive the termination of the Consulting Agreement, Plaintiff's commissions having offset and exceeded sales proceeds, the statute of limitations having run, and individual Defendants' not being parties to the Consulting Agreement. JFPO at 7–9 [ECF No. 215 at 7–9]. In *Scopia Mortg. Corp. v. Greentree Mortg. Co., L.P.*, the court considered whether an amendment to a Joint Final Pretrial Order for purposes of expanding an expert witness' opinion was a tactical change in strategy. 184 F.R.D. 526, 530 (D.N.J. 1998). Noting that movants sought to expand the

area of the expert's opinion from liability to damages, with no reasonable explanation for not seeking to address damages sooner, the court concluded that movants were seeking to try a different strategy, several months after the issuance of the Joint Final Pretrial Order and approximately one month before trial. *Id.* The Court noted the age of the case—four years—as well as the prejudice to the nonmovant who would of course have to respond to the new areas of expert opinion. The Court ultimately declared that a change in strategy is "not something important enough to overpower the prejudice and delay" caused by amendment. *Id.* at 530–31. Similarly, Defendants here ultimately seek to assert a new defense strategy. They suggest the new defenses do not amount to new strategy by arguing that "whether Poe complied with his performance obligations . . . is a contested fact and element that Poe is required to prove as part of his breach of contract claim." Defs.' Reply at 4 [ECF No. 236 at 4]. Defendants conflate Plaintiff's breach of contract claim—asserted at the inception of this litigation—with their defenses to that claim—which they seek to expand, six years into litigation and shortly before trial. Therefore, the Court finds the Defendants' proposed amendment seeks to support defenses that would amount to a new strategy or tactic. The Court concludes that Defendants fail to demonstrate that manifest injustice will result if amendment to the JFPO is not permitted.

## III. CONCLUSION

Accordingly, for all the foregoing reasons,

**IT IS HERBY ORDERED** this **23rd** day of **October, 2026** that Defendants' application [ECF No. 234] is **DENIED.**

s/ Sharon A. King
SHARON A. KING
United States Magistrate Judge

cc: Hon. Renée Marie Bumb, Chief Judge